**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 06-2111

SANDRA F. MASSIE, ET AL.,

Petitioners,

v.

ALBERTO GONZALES,
ATTORNEY GENERAL,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Selya, Senior Circuit Judge,
and Stafford,* Senior District Judge.

William A. Hahn and Hahn & Matkov on brief for petitioner.
August E. Flentje, Attorney, Appellate Staff, Civil Division,
Peter D. Keisler, Assistant Attorney General, and Leonard
Schaitman, Attorney, Appellate Staff, Civil Division, on brief for
respondent.

May 25, 2007

---

*Of the Northern District of Florida, sitting by designation.

**Per Curiam**.   Petitioners, Sandra F. Massie and her husband, Franky Massie (collectively, "Petitioners"), seek review of an order of the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's decision to deny Sandra Massie's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  Finding no merit to Petitioners' arguments, we affirm the BIA's order and deny the petition for review.

I.

Petitioners are natives and citizens of Indonesia—she of the Ambonese ethnic group and he of Manadonese descent—who came to the United States on tourist visas in December 2000.  After the couple failed to leave the United States as required, Mrs. Massie filed an application for asylum, withholding of removal, and relief under CAT with the Immigration and Naturalization Service ("INS").[1]  Mr. Massie was listed as a rider on Mrs. Massie's application.

In her asylum application, Mrs. Massie stated that she did not want to return to Indonesia because she feared that she would be persecuted based on her religion (Protestant) and her race (Ambonese).[2]  She explained that Christianity was a minority

---

[1]The functions of INS have since been transferred to the Department of Homeland Security.

[2]Mrs. Massey was born and raised in Jakarta, Indonesia, although her family was originally from the Moluku islands in eastern Indonesia, of which Ambon is a part.

religion in Indonesia, that Muslim Jihadists had killed thousands of Christians in 1998, that Christians continue to suffer because of their minority status, that there is no safe place for Christians to live in Indonesia, and that finding a job would be difficult for her because of her religion and race.

After being placed in removal proceedings, Petitioners testified before an Immigration Judge ("IJ") at an asylum hearing. Neither indicated that she/he had ever been detained, arrested, or physically harmed while living in Indonesia. Mrs. Massie described some incidents of harassment and intimidation; Mr. Massie denied having experienced any such incidents.

Mrs. Massie stated that, while driving in Jakarta sometime in 1998, she had twice been accosted on a street by some Muslim men who demanded money for "Jihad in Ambon." On the first occasion, the Muslims broke her car window before she agreed to give them money. On the second occasion, she gave them money without further incident. Describing a riot that had occurred in her neighborhood in 1998, Mrs. Massie said that she was trapped in her house for a period of time but that nothing had happened to her home, which she said was "pretty safe" because of its location. Speaking of her parents, who—along with her sister and her in-laws—continue to live in Indonesia,[3] Mrs. Massie said that they had

---

[3]Mrs. Massie's parents, in-laws, and sister are—like the Massies—practicing Christians.

to meet and pray in a movie theater because a group of Jihadists had forced the closure of their church. Mrs. Massie did not describe any other mistreatment suffered by her relatives in Indonesia.

Mrs. Massie also testified that her brother had died following a 1983 automobile accident. She speculated that her brother—a Christian—died because he received untimely, substandard care in a Muslim-dominated government hospital.

Petitioners both testified about Mr. Massie's serious medical problems. Mrs. Massie said that, when they were living in New Hampshire in 2002, her husband had undergone four operations on his right lung. While admitting that he was not sure whether any additional surgery would be needed, Mr. Massie said that his doctor was then concerned about a spot on his left lung. Both Massies said they doubted that the medical community in Indonesia could or would provide the same level of care that Mr. Massie had received in the United States.

When Mrs. Massie attempted to testify about conditions in Ambon, Respondent's counsel objected, noting that Mrs. Massey had no personal knowledge about conditions in Ambon because neither she nor her husband had ever lived in Ambon. The IJ sustained the objection, explaining that country reports would suffice to describe current conditions in Ambon.

The IJ denied Petitioners' asylum claim, finding that

Petitioners failed to establish either past persecution or a reasonable basis for fear of future persecution. The IJ also determined that, because they failed to satisfy the standard for asylum eligibility, Petitioners necessarily failed to satisfy the higher standards for withholding of removal and for relief under CAT. The BIA affirmed the IJ's denial of all three claims, finding that Petitioners failed to satisfy their burdens of proof with regard to all of the relief sought.

On appeal to the BIA, Petitioners complained that a portion of the testimony before the IJ—specifically, Mrs. Massie's testimony concerning the death of her brother—was missing from the appellate record. The BIA denied Petitioner's request for an order directing a full transcription, explaining that Petitioners had failed to allege that the missing testimony would "somehow turn the case." Indeed, the BIA noted that, in denying Petitioners' claims, the IJ had relied not on Mrs. Massie's testimony regarding her brother's medical treatment but on the lack of corroboration.

## II.

Our review, directed to the BIA's decision, is *de novo* on questions of law but deferential as to factual findings. Mukamusoni v. Ashcroft, 390 F.3d 110, 119 (1st Cir. 2004).

Asylum applicants bear the burden of proving that they are unable or unwilling to return to their home country "because of persecution or a well-founded fear of persecution on account of

race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Applicants may meet this burden by (1) demonstrating a well-founded fear of future persecution; (2) by establishing past persecution, in which case a rebuttable presumption of a well-founded fear of persecution arises; or (3) by demonstrating "compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution." Mukamusoni, 390 F.3d at 119; 8 C.F.R. § 208.13(b)(1)(ii) (1997).

Because the word "persecution" has not been defined by statute, the Attorney General, acting through the BIA, has the authority to give content to the word in the first instance. Bocova v. Gonzales, 412 F.3d 257, 263 (1st. Cir. 2005). Although the BIA has chosen to determine what constitutes persecution on a case-by-case basis, it is clear that the term "requires that the totality of a petitioner's experiences add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment." Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005); see also Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005) (upholding the BIA's finding of no persecution where petitioner was arrested, detained, and beaten on seven occasions); Bocova, 412 F.3d at 263-64 (upholding the BIA's finding of no persecution where the petitioner was twice arrested, beaten, and threatened with death, with one of those beatings causing the petitioner to lose

-6-

consciousness and to be taken to the hospital); <u>Guzman</u> v. <u>INS</u>, 327 F.3d 11, 15-16 (1st Cir. 2003) (affirming the BIA's determination that a serious beating did not amount to persecution).  The term, moreover, "always implies some connection to government action or inaction."  <u>Nikijuluw</u>, 427 F.3d at 120-21 (quoting <u>Harutyunyan</u> v. <u>Gonzales</u>, 421 F.3d 64, 68 (1st Cir. 2005)).

Here, the BIA found that Petitioners utterly failed to establish either past persecution or a well-founded fear of future persecution.  Given the precedents and the evidence produced by Petitioners, this court must accept the BIA's fact-based findings.  Clearly, the past incidents of discrimination described by Petitioners—sporadic incidents involving no physical abuse—did not "add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment."  <u>Nikijuluw</u>, 427 F.3d at 120.  Just as clearly, Petitioners offered nothing to establish a well-founded fear of future persecution.

Petitioners complain that the BIA erred (1) by failing to order the transcription of the missing portion of Mrs. Massie's testimony regarding her brother's 1983 death; (2) by requiring corroboration of Mrs. Massie's testimony regarding the cause of her brother's death; and (3) by affirming the IJ's evidentiary ruling prohibiting Mrs. Massie from testifying about conditions in Ambon, where she never lived. According to Petitioners, "there would have been a finding of past persecution" had the BIA not committed such

errors.  We disagree.

Where there is a failure of transcription, we have held that a claimant "must show 'specific prejudice to his ability to perfect an appeal' sufficient to rise to the level of a due process violation."  Kheireddine v. Gonzales, 427 F.3d 80, 85 (1st Cir. 2005) (quoting United States v. Smith, 292 F.3d 90, 97 (1st Cir. 2002)).  There can be no prejudice if the missing portion of the transcript is not material to the issue on review, if the missing material can be derived from other sources, or if the transcription failure makes no difference to the outcome of the review.  Id. at 85-86.  Here, Petitioners make no effort to explain how the missing testimony differed from other material in the record (i.e., Mrs. Massie's affidavit describing the incident involving her brother). They do not identify anything in the missing testimony that would draw into question the IJ's conclusion that Mrs. Massie's assertion—that her brother was denied timely, appropriate medical treatment based on his race and religion—was speculative at best. They altogether fail to demonstrate that the outcome of the case would have been different had the BIA had the benefit of the missing transcript.  Quite simply, their claim of error in this regard is meritless.

The IJ's evidentiary ruling refusing to allow Mrs. Massie to testify about conditions in Ambon is reviewed for abuse of discretion.  Sharari v. Gonzales, 407 F.3d 467, 476 (1st Cir.

2005). Because neither Mrs. Massie nor Mr. Massie ever lived in Ambon, they had no first-hand knowledge about the conditions in Ambon. The IJ did not abuse his discretion in refusing to admit such testimony; and the BIA did not err in upholding the IJ's ruling.

An IJ is not required to accept as true an asylum applicant's speculation as to the cause of an event. Ziu v. Gonzalez, 412 F.3d 202, 204 (1st Cir. 2005). Here, both the IJ and the BIA were correct in concluding that Mrs. Massie's speculation about the cause of her brother's death lacked "the requisite degree of specificity to sustain the petitioner's burden of proof" without some sort of corroboration. Aquilar-Solis v. INS, 168 F.3d 565 (1st Cir. 1999). Even if poor treatment were presumed based on Mrs. Massie's lay testimony, Mrs. Massie could do no more than surmise that her brother's allegedly poor treatment was the result of his race and/or religion. Furthermore, it was apparent from Mr. Massie's testimony that his concerns about medical treatment in Indonesia were based not on any fear that he would obtain poor medical treatment because of his ethnicity or religion but rather on his perception that nobody in Indonesia could give him the quality of care that he received in the United States. Under the circumstances, it was not error to require corroboration.

III.

For the reasons stated above, we AFFIRM the BIA's order

and DENY Petitioners' petition for review.[4]

---

[4]Although it appears that Petitioners do not challenge the BIA's decision upholding the IJ's denial of Petitioners' withholding of removal and CAT claims, we note that our decision regarding asylum dooms any such challenge. See Alvarez-Flores v. INS, 909 F.2d 1, 4 (1st Cir. 1990) (explaining that "[s]ince the standard for withholding deportation is more stringent, a petitioner unable to satisfy the asylum standard fails, *a fortiori*, to satisfy the former"); Orelien v. Gonzales, 467 F.3d 67, 73 (1st Cir. 2006) (explaining that, "[i]n order to find sanctuary under the CAT, . . . an alien must show that he will more likely than not be tortured upon returning to his homeland," "torture" being defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person").