Not For Publication in West's Federal Reporter

# United States Court of Appeals
## For the First Circuit

No. 07-2167

MARUHUM MAROJAHAN SIAHAAN, et al.

Petitioners,

v.

MICHAEL B. MUKASEY,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Selya, Circuit Judges,
and Domínguez,* District Judge.

William A. Hahn, on brief for petitioners.
Nicole M. Nurley, Attorney, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, Jeffrey S. Bucholtz, Acting Assistant Attorney General, Civil Division, and James A. Hunolt, Senior Litigation Counsel, on brief for respondent.

October 17, 2008

---

* Of the District of Puerto Rico, sitting by designation.

**TORRUELLA, Circuit Judge**.  Petitioners Willy M. Siahaan ("Mrs. Siahaan") and her husband, Maruhum M. Siahaan ("Mr. Siahaan") (collectively, "Petitioners"), are natives and citizens of Indonesia.  The Department of Homeland Security charged Petitioners with removability due to overstayed visas pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B).  Thereafter, Petitioners filed separate applications for asylum alleging religious persecution.  They also requested withholding of removal and protection under the Convention Against Torture ("CAT").  Their applications were consolidated and denied by an immigration judge ("IJ") who found them to be removable as charged.  The Board of Immigration Appeals ("BIA") summarily affirmed this decision.  After careful consideration, we deny their petition for review.

## I.  Background[1]

We summarize the facts as presented by Mrs. Siahaan in her hearing testimony and asylum application.  See Sok v. Mukasey, 526 F.3d 48, (1st Cir. 2008).  Petitioners were born in Indonesia and married in Jakarta; they have four grown children who still live there.  Mr. Siahaan last came to the United States in August 2002, and Mrs. Siahaan in April 2004.  They are Protestant and,

---

[1]  Mr. Siahaan did not testify during the immigration proceedings and, as he is a rider on his wife's application, his request for asylum depends in the first instance on the facts adduced by Mrs. Siahaan.

while in Indonesia, they attended the Nazareth Church in Jakarta. Petitioners now attend the Holy Trinity Indonesian Church in New Hampshire.

The Petitioners' claims of persecution are predicated on their religious beliefs. Mrs. Siahaan testified that she and her husband encountered problems attending church in Indonesia because of bombing incidents. She described bomb threats during the Christmas holidays in 1998, 1999, and 2000. Although none of these threats were leveled against the Petitioners' church, the congregation's fears resulted in the church being guarded.

Mrs. Siahaan also testified that in the early afternoon on May 14, 1998, while at a shopping mall, she heard a bomb explode. She saw some shops on fire and people running and crying. As she exited the mall, Mrs. Siahaan was pushed to the ground by three individuals who she assumed to be Muslim -- based on appearance and attire -- and who asked her if she was Christian. Mrs. Siahaan contends that they identified her as Christian due to her Chinese appearance and because she was wearing a cross. The individuals kept pushing Mrs. Siahaan, but she was able to reach an exit and escape. That same night, Petitioners were warned by neighbors to leave their home because rioters targeting Christians were headed toward the area; the rioters never arrived because they were told that everyone living in the Petitioners' residential complex was native Indonesian.

In another incident in 2003, Mrs. Siahaan was at home with her daughter when she heard someone throwing rocks at their house. Mrs. Siahaan contends that the people throwing rocks were Muslims trying to terrorize her for being Christian. When asked at the hearing how they knew she was Christian, Mrs. Siahaan surmised that some neighbors must have told them.

Mrs. Siahaan further testified that from 1997 to 2004 she traveled multiple times between Indonesia and the United States. Despite being in possession of a valid United States visa and Indonesian passport during the 1998 riots, for example, Mrs. Siahaan chose to stay in Indonesia because she testified she needed time to get her affairs in order. In August 2003 Mrs. Siahaan also returned to Indonesia on an extended visit to receive follow-up care on a medical operation she had undergone the year before; she stayed for seven months. In April 2004, Mrs. Siahaan traveled back to the United States and has remained since then.

Mrs. Siahaan's siblings, daughters, and sons, all of whom are Christian, remain in Jakarta without incident to this day. Mrs. Siahaan testified that her younger brother was beaten by Muslims in the 1970s for being Christian. As a result of the beating, Mrs. Siahaan's brother suffered brain damage and has had to take medication to this day. On further inquiry, Mrs. Siahaan also testified that the individuals who assaulted her brother were morphine addicts.

-4-

After hearing Mrs. Siahaan's testimony, the IJ denied the Petitioners' application for asylum, withholding of removal, and protection under the CAT, and found Petitioners to be removable as charged. The IJ found that although Mrs. Siahaan's testimony "was, at all times, credible," he could not find that the Petitioners had experienced past persecution because the 1998 riot incident was "isolated violence rather than persecution directed at [Mrs. Siahaan] . . . due to [her] religious faith." The IJ found similarly regarding the rock-throwing incident in 2003, describing the incident as "a random act." On June 27, 2007, the BIA affirmed the IJ's decision in its entirety, and dismissed Petitioners' appeal. Petitioners now seek judicial review.[2] They argue that the IJ erred in finding that they suffered no past persecution.

## II. Discussion

### A. Standard of Review

While we normally review decisions of the BIA and not those of IJs, to the extent that the BIA has adopted and affirmed the IJ's decision, we review the adopted portion of the IJ's decision. See Mewengkang v. Gonzáles, 486 F.3d 737, 739 (1st Cir. 2007); accord Vásquez v. I.N.S., 177 F.3d 62, 64 (1st Cir. 1999).

---

[2] We consider only Petitioners' asylum claim as they failed to raise their withholding of removal and CAT claims on this petition for judicial review. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Thus, as the BIA summarily affirmed the IJ's decision, our review focuses on the IJ's factual findings and legal conclusions.

The IJ's factual findings are reviewed under the "substantial evidence" standard; they may only be reversed if the evidence on the record would compel a reasonable factfinder to make a contrary determination. Sok, 526 F.3d at 52-53. Findings regarding eligibility for asylum are treated as factual findings under the "substantial evidence" standard. See I.N.S. v. Elías-Zacarías, 502 U.S. 478, 483 (1992) (applying this standard). The IJ's legal conclusions are reviewed de novo, granting the necessary appropriate deference to the agency's reasonable interpretation of the INA or any other statute or regulation within its purview. See Kechichian v. Mukasey, 535 F.3d 15, 21 (1st Cir. 2008) (quoting Segran v. Mukasey, 511 F.3d 1, 5 (1st Cir. 2007)).

## B. Applicable Law

Asylum applicants have the burden of establishing that they are eligible for asylum by providing credible evidence showing: (1) that the applicant has a fear of persecution; (2) that such fear is based on past persecution or a well-founded fear of future persecution; (3) that the persecution is on account of race, religion, nationality, membership in a particular social group, or political opinion; and (4) that the applicant is unable or unwilling to avail herself of the protection of her country of

provenance because of such persecution. 8 C.F.R. § 208.13 (a)-(b); Galicia v. Ashcroft, 396 F.3d 446, 448 (1st Cir. 2005).

If the court were to find that the applicant suffered past persecution, then it presumes there is a well-founded fear of future persecution.  8 C.F.R. § 208.13(b)(1); Phal v. Mukasey, 524 F.3d 85, 90 (1st Cir. 2008).  The burden then shifts to the Government to show that the conditions in the applicant's country of provenance have sufficiently changed to rebut this presumption or that the applicant could avoid future persecution by relocating to a different part of the country.  8 C.F.R. § 208.13(b)(1)(i)(A)-(B); Orelien v. Gonzáles, 467 F.3d 67, 71 (1st Cir. 2006).

If a court were to find that there was no past persecution, however, an asylum applicant may still be eligible for asylum based on a well-founded fear of future persecution.  See 8 C.F.R. § 208.13(b)(1);  Toloza-Jiménez v. Gonzáles, 457 F.3d 155, 160-61 (1st Cir. 2006) (quoting 8 U.S.C. § 1101(a)(42)(A)).  In order to show a well-founded fear of future persecution an applicant must not only harbor a genuine subjective fear of future persecution, but she must also show, on an objective basis, that a reasonable person in her circumstances would fear persecution upon removal.  See Toloza-Jiménez, 457 F.3d at 161 (quoting Laurent v. Ashcroft, 359 F.3d 59, 65 (1st Cir. 2004)).

### C. Asylum Claim

Petitioners state two main contentions regarding the 1998 riot and 2003 rock-throwing incidents experienced by Mrs. Siahaan. First, they argue that the IJ erred in finding that such incidents did not amount to persecution. Second, they assert that because the IJ found Mrs. Siahaan's testimony to be credible, he was "required to accept her testimony as true." Lukwago v. Ashcroft, 329 F.3d 157, 164 (3d Cir. 2003) (internal quotation marks omitted).

Under the substantial evidence standard, the question before us is whether the evidence on the record would compel a reasonable factfinder to make a determination contrary to that of the IJ; i.e., that the 1998 riot and 2003 rock-throwing incidents amount to past persecution. Our review of the record leads to the conclusion that the evidence does not necessarily compel such a finding. While it is clear that the incidents at issue took place during widespread civil unrest, there is no evidence that they amounted to targeted persecution of Mrs. Siahaan. See Journal v. Keisler, 507 F.3d 9, 12 (1st Cir. 2007) ("In determining whether alleged incidents rise to the level of persecution, one important factor is whether 'the mistreatment can be said to be systematic rather than reflective of a series of isolated incidents.'" (quoting Bocova v. Gonzáles, 412 F.3d 257, 263 (1st Cir. 2005))). The IJ properly evaluated the incidents, stating that

-8-

> [w]hile [Petitioners] may suffer from some unease and concern that [the] unrest and friction [in Indonesia] may erupt into violence, and they may be in the line of fire, there has been no evidence presented in this case that any such violence or any activity rising to the level of persecution has been directed at the respondents.

We agree and find that the evidence on the record supports the IJ's holding. As traumatic as her experiences may have been, Mrs. Siahaan only experienced two unfortunate incidents of violence during a period of civil unrest; she was not a specifically targeted victim of persecution. See Sela v. Mukasey, 520 F.3d 44, 46 (1st Cir. 2008).

The IJ was also justified in finding that, although Petitioners may have a genuine subjective fear of returning, the record does not compel a finding that a reasonable person in their situation would, on an objective basis, have a well-founded fear of persecution upon removal. Petitioners made several trips to Indonesia after the incidents that form the basis for their asylum claim, and have family members living in Indonesia who have not suffered any persecution. See Journal, 507 F.3d at 12 (finding that the petitioner's family's ability to relocate and continue to live in Haiti safely and without harassment significantly undercuts the petitioner's claimed fear of persecution) (citing Nikijuluw v. Gonzáles, 427 F.3d 115, 122 (1st Cir. 2005)). These facts undermine Petitioners' claims of fear of future persecution.

With respect to Petitioner's argument that the IJ was required to accept Mrs. Siahaan's testimony as true because he found her to be credible, we find such argument to be meritless. We have previously upheld an IJ's conclusions on the basis that, while a petitioner may testify credibly as to his genuinely felt fear, the petitioner may fail to meet the objective test that "'requires a showing by credible and specific evidence that [such] fear is reasonable.'" Journal, 507 F.3d at 12 (quoting Mukamusoni v. Ashcroft, 390 F.3d 110, 120 (1st Cir. 2004)); see also Phal, 524 F.3d at 90 (affirming BIA's and IJ's conclusion "that regardless of whether [petitioner] had testified credibly, she failed to establish a well-founded fear of future persecution"). As such, the IJ was not required to make a finding of past persecution because, even accepting all of Mrs. Siahaan's factual testimony as true, the evidence on the record does not necessarily compel such a finding.[3]

### III. Conclusion

For the foregoing reasons, we deny the petition for judicial review.

**DENIED**.

---

[3] As we find that the 1998 riot and 2003 rock-throwing incidents do not rise to the level of persecution, we refuse to entertain the Petitioners' argument that the IJ failed to engage in a proper "mixed motives" analysis regarding the motivation behind such incidents.

-10-