# United States Court of Appeals
## For the First Circuit

No. 08-1381

FRANCINE PANGEMANAN,

Petitioner,

v.

ERIC H. HOLDER, JR.,[*] ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Selya and Stahl, Circuit Judges.

William A. Hahn with whom Hahn & Matkov was on brief for petitioner.
Anthony Wray Norwood, Senior Litigation Counsel, Office of Immigration Litigation, U.S. Department of Justice, with whom Gregory G. Katsas, Assistant Attorney General, was on brief for respondent.

June 10, 2009

---

[*]    Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Eric H. Holder, Jr. has been substituted for former Attorney General Michael Mukasey as the respondent.

**LYNCH**, **Chief Judge**.  The sole question presented by this petition for review by Francine Pangemanan, of Indonesia, is whether the Board of Immigration Appeals ("BIA") erred in affirming the finding of an immigration judge ("IJ") that Pangemanan had not established her claim for withholding of removal after she overstayed in this country.  Because there was substantial evidence to support the determination that she had not shown past persecution or a well-founded fear of future persecution, we deny the petition.

I.

Pangemanan entered the United States on March 26, 2000 as a non-immigrant visitor with authorization to remain no longer than six months.  Her husband had come to the United States in 1997.  She overstayed.  On February 3, 2003, the Immigration and Naturalization Service[1] served Pangemanan with a Notice to Appear, charging her as removable under 8 U.S.C. § 1227(a)(1)(B).  Pangemanan filed an application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT") on September 23, 2004.

Pangemanan's testimony before the IJ was that she is a Christian.  She actively participated in her church in Indonesia

---

[1]    On March 1, 2003, the INS ceased existing as an independent agency, and many of its duties were transferred to U.S. Citizenship and Immigration Services, a subdivision of the Department of Homeland Security.  Sharari v. Gonzales, 407 F.3d 467, 469 n.2 (1st Cir. 2005).

from 1972 until she came to the United States in 2000. She and her husband were never mistreated in Indonesia on account of their religion. Pangemanan's expressed fear of returning to Indonesia was instead based upon the experiences of several family members.

Specifically, Pangemanan claimed that her father was denied promotions within the military because he was a Christian. Her father died in 1990, and Pangemanan attributed his death, in part, to the stress he felt as an Indonesian Christian.

Pangemanan's mother had some difficulty obtaining her husband's pension following his death. However, she continued to live in Indonesia without incident until her death in 2006.

Pangemanan's brother was stabbed near a mosque in 1998 by a Muslim youth. Yet he continues to live in Indonesia and has not subsequently experienced any mistreatment on account of his religion.

In 1999, a Christian school near the home of Pangemanan's sister burned down, causing her sister to move to another town in Indonesia. She also still lives in Indonesia and has experienced no further problems.

Pangemanan has two daughters. Her daughters attended a Christian school in Indonesia. Although neither of her daughters was harmed while living in Indonesia, Pangemanan testified that Christian students were the victims of violence in Indonesia.

Moreover, the father of her younger daughter's friend was beheaded in 2000.

Pangemanan's husband testified that a Christian school founded by his grandfather was burned in 2000. His brother, however, continues to work as a police officer in the same town.

On July 20, 2006, the IJ rejected Pangemanan's asylum application as untimely, and found the delay was not excused by "changed conditions" or "extraordinary circumstances." See 8 U.S.C. § 1158(a)(2)(B), (D). But even assuming that Pangemanan's asylum application was not time-barred, the IJ found that Pangemanan had failed to establish a well-founded fear of future persecution should she be returned to Indonesia. See Scatambuli v. Holder, 558 F.3d 53, 58 (1st Cir. 2009); see also 8 U.S.C. § 1101(a)(42)(A). Having failed to make the required showing for asylum relief, Pangemanan's request for withholding of removal was also rejected. The IJ also denied Pangemanan relief under the CAT, finding no evidence that Pangemanan would be tortured by or with the acquiescence of the Indonesian government upon her return.

On February 29, 2008, the BIA affirmed in an opinion that largely tracked the IJ's reasoning. This timely petition for review followed, raising only the question of denial of withholding of removal.[2]

---

[2] Pangemanan has not made any arguments to us regarding her CAT claim, which we deem waived. See Scatambuli, 558 F.3d at 61; Sinurat v. Mukasey, 537 F.3d 59, 62 (1st Cir. 2008).

II.

This court lacks jurisdiction to review Pangemanan's asylum claim, which the IJ found time-barred. See 8 U.S.C. § 1158(a)(3). We address only Pangemanan's claim for withholding of removal. Her argument is that the IJ erred in finding any fear petitioner had of returning to Indonesia was not objectively reasonable because the IJ did not account for numerous incidents which were geographically close to where she lived even if they involved other persons. She also argues that the IJ and BIA failed to account for an overlay of government laws, policies, and practices which penalize the Christian minority. In sum, the argument is that the totality of the evidence was not considered.

Our review of the BIA's factual findings is under the deferential substantial evidence standard. Sinurat, 537 F.3d at 61. "We uphold the BIA's findings if they are 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting Sharari, 407 F.3d at 473). The BIA's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3), an applicant must demonstrate that it is more likely than not that she will face persecution in the country of removal. See Scatambuli, 558 F.3d at 58; see also 8 C.F.R. § 1208.16(b). We

-5-

have described this showing as requiring a "clear probability" of future persecution. See, e.g., Oroh v. Holder, 561 F.3d 62, 67 (1st Cir. 2009).

We conclude that substantial evidence supports the conclusion that Pangemanan did not meet her burden of demonstrating a clear probability of future persecution. Pangemanan, her husband, and daughters never themselves were mistreated in Indonesia on account of their Christian faith. At most, Pangemanan has alleged a series of isolated incidents involving others, which fall well short of the sort of systemic mistreatment indicative of past persecution or a clear probability of future persecution for her. See Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005); see also Budiono v. Mukasey, 548 F.3d 44, 48 (1st Cir. 2008) ("To qualify as persecution, the harm to the petitioner must exceed 'unpleasantness, harassment, and even basic suffering.'" (quoting Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000))); Susanto v. Gonzales, 439 F.3d 57, 60-61 (1st Cir. 2006) ("[P]ersecution requires 'more than mere discomfiture, unpleasantness, harassment, or unfair treatment.'" (quoting Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005))); see generally Sombah v. Mukasey, 529 F.3d 49, 51 (1st Cir. 2008) ("Discrimination in Indonesia does not, without more, qualify a Christian Indonesian national for asylum."). Moreover, the fact that Pangemanan's family continues to live safely in Indonesia undermines her claim that she faces a

clear probability of future persecution. <u>See, e.g.,</u> <u>Ouk</u> v.
<u>Gonzales</u>, 464 F.3d 108, 111 (1st Cir. 2006).

Finally, contrary to Pangemanan's assertions, the BIA and IJ fully considered all of the testimonial and documentary evidence submitted in support of her claim for relief. The BIA also correctly noted that petitioner relied on riots in 1988 and country reports from 2002 and 2003. We agree that these references were not current and did not advance petitioner's cause.

The petition for review is <u>denied</u>.