# United States Court of Appeals

## For the First Circuit

No. 08-1979

YAHYA BANTURINO,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

ON PETITION FOR REVIEW OF ORDERS AND DECISIONS
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Torruella and Howard, Circuit Judges.

William A. Hahn and Hahn & Matkov on brief for petitioner.
Surell Brady, Trial Attorney, Michael F. Hertz, Acting
Assistant Attorney General, and Anthony N. Norwood, Senior
Litigation Counsel, on brief for respondent.

July 31, 2009

**Per Curiam**. Yahya Banturino, a native and citizen of Indonesia, petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming the denial of relief from removal by the Immigration Judge ("IJ"). Banturino contends that there was legal error in the agency determination that he did not qualify for an exception to the filing deadline for an asylum application. In addition, petitioner faults the agency's finding that he was not eligible for withholding of removal.

After studying these claims and the record on which they are based, we conclude that the petition before us reflects a regrettably casual approach to the applicable standard of review, to the governing legislation and regulations, and to the decisions of this court that clearly set out the factors that inform our judgments on petitions for review of BIA denials of relief from removal.

I.

Banturino entered the United States in July, 1996 on a six-month visitor's visa. He has remained in the United States since that entry. In early 2003, he filed an application for asylum and was soon thereafter placed in removal proceedings. Banturino does not challenge his removability under 8 U.S.C. § 1227(a)(1)(B).

At his hearing before the IJ, Banturino, a Christian, testified about two incidents that made him feel that he would not be safe in his home country. The first occurred on May 3, 1996,

-2-

before he left Indonesia. An Islamic extremist group attacked three churches.  One of the churches was set on fire; the fire eventually spread to three nearby houses, one of which belonged to Banturino's family.  The testimony is unclear, but it appears that upon seeing the church in flames, the family fled the house, fearing that the fire would spread.  Petitioner tried to help his mother run away.  However, his mother, who suffered from a heart condition, died on the way to a clinic.  Banturino escaped without injury.

The second incident occurred in 2002, after Banturino had moved to the United States.  A bus was attacked by extremists who killed an Italian passenger.  Banturino stated that he learned about the incident from an article on the internet, which stated that his brother had been on the bus.  His brother was unharmed.

Banturino did not argue that his asylum application was timely in the absence of an exception.[1]  The IJ found that the exception to the filing deadline urged by Banturino - changed country conditions - had not been established.  The IJ further held that Banturino was not eligible for withholding of removal because he did not show that it was more likely than not that his life or freedom would be at risk if he returned to Indonesia.  The BIA, in an order addressing asylum and withholding of removal, among other

---

[1] An asylum application must ordinarily be filed within one year after the date of the alien's arrival in the United States, or by April 1, 1998, which ever is later. 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208.4(a)(2)(ii).  In Banturino's case, given his arrival in 1996, the April 1, 1998 deadline applied.

issues, affirmed in an opinion consistent with the IJ's reasoning.

"We review the BIA's decision in addition to those portions of the IJ's decision adopted by the Board." Kho v. Keisler, 505 F.3d 50, 53 (1st Cir. 2007)(citation omitted). Our review of the BIA's factual findings is deferential and limited to assessing whether the agency determination is supported by substantial evidence in the record. To upset the agency ruling, the evidence must compel a reasonable adjudicator to reach a contrary conclusion. Pangemanan v. Holder, 569 F.3d 1, 2 (1st Cir. 2009); Sompotan v. Mukasey, 533 F.3d 63, 68 (1st Cir. 2008); Pulisir v. Mukasey, 524 F.3d 302, 307 (1st Cir. 2008).

## II.

The BIA agreed with the IJ that Banturino was ineligible for asylum based on his failure to timely file under the statute or to establish either changed circumstances in Indonesia or extraordinary circumstances relating to his delay in filing an application.

Banturino properly concedes that agency determinations concerning the timeliness of asylum applications and eligibility for exceptions to the deadline are not reviewable by this court, unless the alien identifies a legal or constitutional defect in those determinations. 8 U.S.C. § 1252(a)(2)(D); Odmar v. Mukasey, 294 Fed.Appx. 611, 612-13 (1st Cir. 2008). However, Banturino argues that there was legal error: the IJ's failure to identify the

date of the filing deadline.

Banturino argued before the IJ that the changed circumstances exception applied because he learned that the situation was getting worse in Indonesia in 2002-2003. Both the IJ and the BIA specifically addressed and rejected the argument that the circumstances in Indonesia had worsened in 2002 to a degree that would make it reasonable to apply for asylum for the first time after six years in this country.

Banturino bore the burden of demonstrating his eligibility for asylum. Thus, to make out a prima facie case of legal error, he would have to point to evidence in the record establishing the date upon which he became eligible for asylum, the date he applied for asylum, and evidence that the time between the two dates was reasonable. 8 C.F.R. §§ 1208.4(a)(4)(ii)(application must be made within reasonable time of eligibility). The burden was not on the agency to supply these dates. Moreover, the original deadline was unimportant given the agency determination that petitioner had failed to demonstrate changed circumstances since the time of his arrival to justify the concededly untimely filing.[2]

---

[2] Petitioner's argument regarding changed conditions was that the bus incident and the country report for 2002 documenting attacks on churches made him realize that it was unsafe to return to Indonesia. The IJ, referring to petitioner as an intelligent college graduate, strongly rejected this contention. "For the respondent to believe that his situation was exacerbated in 2002 by a series of attacks on churches, ... inasmuch as he himself had been burned out of his home because of an attack on a church, is not really a rational or reasonable reason for not having filed for

[FN1]

In Oroh v. Holder, 561 F.3d 62, 66 (1st Cir. 2009), we recently rejected a similar attempt to establish legal error in the agency's determination of ineligibility for asylum on the ground that the agency had failed to define a "reasonable time period" in the context of changed circumstances. We emphasize again that in order to "trigger our jurisdiction, the putative constitutional or legal challenge must be more than a disguised challenge to factual findings." Oroh, 561 F.3d at 67 (citation omitted).

We lack jurisdiction to review the denial of asylum.

### III.

To qualify for withholding of removal under 8 U.S.C. § 1231(b)(3)(A), petitioner must show that it is "more likely than not," that is, that there is a clear probability, that he will be subject to persecution on a prohibited ground should he return to his county. Pangemanan, 569 F.3d at 2, citing Oroh, 561 F.3d at 67. There was substantial evidence in the record supporting the agency conclusion that petitioner failed to carry this burden.

a. No past persecution

An applicant who establishes that he has suffered past persecution can benefit from a rebuttable presumption of entitlement to withholding of removal. The BIA concluded that the

---

political asylum at a point in time where he had fled Indonesia because of fear." Oral Decision at 4.

-6-

only incident that occurred while Banturino lived in Indonesia, while tragic, did not rise to the level of harm that amounts to "persecution." His mother's age and fragile health were contributing factors in her death while trying to escape the spread of the church fire. Banturino himself was not harmed. We have repeatedly held that, to be considered persecution, harm inflicted on the alien in his home country must exceed "unpleasantness, harassment, and even basic suffering." Sinurat v. Mukasey, 537 F.3d 59, 61 (1st Cir. 2008). See also Pangemanan, Sombah v. Mukasey, 529 F.3d 49, 51 (1st Cir. 2008); Massie v. Gonzales, 235 Fed. Appx. 5, 9 (1st Cir. 2007)(per curiam).

Petitioner fails to acknowledge that even had he suffered extremely serious harm in Indonesia, "persecution" has additional components, and the record does not reflect that petitioner addressed them with any precision. First, Banturino points to no evidence in the record establishing a nexus between the harm he suffered and his own religion. Banturino's testimony about his house burning was devoid of any suggestion that his house, as opposed to the nearby church, had been targeted. Neither did he testify as to whether the other two houses that were burned when the church fire spread were owned or occupied by Christians. Recent cases have made clear that even the most serious harm is not persecution unless there is a nexus between its infliction and a statutorily protected ground - in this case, Banturino's religion.

-7-

See, e.g., Sompotan v. Mukasey, 533 F.3d at 68; Pulisir v. Mukasey, 524 F.3d at 309 n.4.

Sporadic incidents of violence or harm may not amount to persecution when a petitioner has not been individually targeted. Budionao v. Mukasey, 548 F.3d 44, 48-49 (1st Cir. 2008)(series of isolated events found not to be systematic maltreatment amounting to persecution); Siahaan v. Mukasey, 298 Fed.Appx. 18, 21 (1st Cir. 2008)("As traumatic as her experiences may have been, Mrs. Siahaan only experienced two unfortunate incidents of violence during a period of civil unrest; she was not a specifically targeted victim of persecution").

The evidence does not compel the conclusion that the agency erred in its finding regarding the absence of past persecution, as that concept has been explicated in our cases.

b. Clear Probability of Future Persecution

The BIA also concluded that Banturino had not established that there was a clear threat to his life or freedom if he returned to Indonesia. He had not established either (1) that it was more likely than not that he would be singled out for persecution, or (2) that there was a pattern or practice of persecution of Christians that is carried out by or supported by the government, or that the government is unwilling or unable to deal with private parties who perpetrate criminal acts.

There was no evidence whatsoever that Banturino would be

-8-

singled out for persecution.  In this context, it was proper for the agency to consider that Banturino's brother has lived in Indonesia without problems except for the 2002 bus incident in which he was not harmed. Nor did Banturino establish a pattern or practice, which would require evidence of "systematic persecution" of Christians in Indonesia, as opposed to the existence of either civil conflict or a pattern of discrimination.

> That a group suffers due to violent civil conflict or "general insecurity" in the home country does not suffice to establish a pattern of practice.

Kho v. Keisler, 505 F.3d at 54.

The IJ consulted recent State Department Country and International Religious Freedom Reports.  He noted, among other factors, (1) the government policy of officially recognizing Christianity and acknowledging certain Christian holidays, (2) the increased cooperation among religious groups since 2005, and (3) the increased willingness of local police to respond to violence. He concluded that the sporadic violence that remains is the work of extremist individuals neither representing nor supported by the government, and that country conditions appear to be improving. The BIA agreed.

The agency is entitled to rely on the State Department's country reports as proof of country conditions and may give them considerable weight, as long as any evidence adduced to contradict them is considered.  Where the agency's interpretation of the

evidence as a whole is reasonable, we do not disturb it. Pulisir v. Mukasey, 524 F.3d 302, 310. "We have repeatedly affirmed the BIA's determinations, made on the evidence submitted in various cases, that there is no ongoing pattern of practice of persecution against ... Christians in Indonesia." Kho v. Keisler, 505 F.3d at 54; Sinurat v. Mukasey, 537 F.3d at 62.

Finally, we are not persuaded by Banturino's suggestion that consideration of cases from other courts of appeals would enhance our analysis of his case. As we did in Pulisir, 524 F.3d at 308-09, we regard it as unnecessary to consider whether the "sliding scale" or "disfavored group" approach suggested in Singh v. INS, 94 F.3d 1353 (9th Cir. 1996), and revisited in Wakkary v. Holder, 558 F.3d 1049 (9th Cir. 2009), is consistent with our own precedents. Adoption of that approach would not change the outcome in this case, given the gaps in evidence that we have identified. Banturino's reliance, in his reply brief, on language in Mufied v. Mukasey, 508 F.3d 88 (2nd Cir. 2007), is simply misplaced. Mufied's primary concern was the agency's failure to make a factual finding on the petitioner's claim of a pattern and practice of persecution against Christians in Indonesia. That is not this case.

The conclusion that petitioner is not eligible for withholding of removal is fully supported by the record. The petition for review is denied.

-10-

IV.

We note that all of the First Circuit cases cited in this opinion involve Indonesian petitioners represented by Mr. Banturino's counsel. In addition to the cited cases, in the past two years counsel has represented Christian Indonesian petitioners in, among others, Sunoto v. Gonzales, 504 F.3d 56 (1st Cir. 2007); Andri FNU, 303 Fed.Appx. 1, (1st Cir. 2008); Evelyne v. Keisler, 2007 WL 2914538 (1st Cir. Oct. 5,2007)(unpub); Pakasi v. Mukasey, 07-1551, judgment entered May 6, 2008; Palit v. Mukasey, 07-1786, judgment entered April 30, 2008; Sutiani v. Mukasey, 07-1900, judgment entered April 24, 2008; Maria v. Mukasey, 07-2085, judgment entered February 27, 2008. None of the named petitioners was granted relief from removal by the BIA, and none of those determinations was disturbed by this court.

The facts of every case are different and no case can determine the outcome of another. However, as the body of agency and court decisions grows, more guidance is available for the court in reviewing petitions and for attorneys in assessing the strength of their clients' claims.

This court has been clear about several issues arising in cases where the BIA has denied relief from removal. Disagreements with the factual findings of the BIA are not to be dressed up as legal challenges. Petitions are to reflect familiarity with and respect for both the limits of our jurisdiction and the proper

-11-

standard of review of any aspect of the agency decision that is properly challenged.  Where relevant to the claims made, petitions are to refer to record evidence to show: "persecution" as it has been defined to date; a nexus between harm and a statutorily protected ground; a nexus between harm and government involvement, support, or apathy; and competent evidence of current country conditions.

In light of our clearly established law on these issues, we are concerned about the waste of client and judicial resources engendered by hopeless petitions such as this one.  We strongly recommend that counsel review his several petitions now pending in this court to assure himself that none suffers from the defects we have addressed.

The petition for review is <u>denied</u>.