NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0320n.06

No. 21-3774

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |
|---|---|
| MIGUEL ANGEL MARTINEZ-CASTRO, MIGUEL ANGEL MARTINEZ-PORTILLO, and VELMA MARGARITA MARTINEZ-PORTILLO, | ) ) ) ) ) |
| Petitioners - Appellants, | ) ) |
| v. | ) ) |
| MERRICK B. GARLAND, Attorney General, | ) ) |
| Respondent - Appellee. | ) ) ) |

**FILED**
Aug 05, 2022
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

OPINION

Before: MOORE, GRIFFIN, and THAPAR, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner and his children fled to the United States to escape gang activity in El Salvador. They unsuccessfully sought asylum, withholding of removal, and protection under the Convention Against Torture. We deny their petition for review.

I.

Petitioners Miguel Angel Martinez-Castro ("Martinez-Castro"), and his children, Velma Margarita Martinez-Portillo and Miguel Angel Martinez-Portillo ("Miguel Angel"), are natives and citizens of El Salvador. While there, petitioner's then-wife, Portillo, and other gang members tried to coerce their children to participate in gang activities. Their actions ranged from generic threats to specific acts, like suggesting they would "murder" Martinez-Castro, pointing a gun at

Velma, forcing Miguel Angel to accompany gang members while they "monitor[ed]" and "rob[bed]" people, and hitting Miguel Angel due to his unwillingness to participate in a robbery.

Martinez-Castro divorced Portillo in 2014, and he and his children lived in El Salvador for about two years thereafter. A Salvadoran prosecutor determined that Portillo posed a threat to her children's safety due to her gang involvement, and a Salvadoran court ultimately awarded him custody and barred her from visiting the children. From this point forward, Martinez-Castro had no contact with Portillo.

Martinez-Castro did, however, have contact with gang members. They continued to menace him in public places, harass him over telephone, and watch the family, including while the children were in school. In one notable event, Portillo's boyfriend contacted Miguel Angel and threatened to kill his father and sister if he did not "go with [the gang]." And in another, gang members briefly detained Martinez-Castro, but without inflicting physical injury. Martinez-Castro admitted these efforts were solely related to gang-recruitment efforts. At no point following the divorce did gang members physically harm him or his children.

In September 2016, Martinez-Castro filed a complaint with the Salvadoran police regarding the gang's ongoing threats. He and his children fled to the United States shortly thereafter. Salvadoran police were investigating the complaint at the time he and his children left El Salvador.

Martinez-Castro applied for asylum under 8 U.S.C. § 1158, withholding of removal under 8 U.S.C. § 1231(b)(3)(A), and protection under the Convention Against Torture (CAT), 8 C.F.R. 1208.16. Miguel Angel and Velma sought derivative asylum under 8 U.S.C. § 1158(b)(3). An Immigration Judge (IJ) found petitioners credible and their situation "sympathetic," but denied relief. In short, the IJ found threat-specificity lacking and concluded they had not demonstrated

past persecution or a well-founded fear of future persecution. She also noted the Salvadoran government had taken steps to mitigate the gang violence experienced by the family. The IJ additionally concluded petitioners' purported social group—"single fathers in El Salvador who have exposed gang activity in Salvadorian courts"—was not a cognizable social group, and that even if it was, there was not a sufficient nexus between the social group and the alleged persecution. Finally, the IJ rejected their CAT claim for failure to establish that El Salvador was unable or unwilling to protect them against potential harm from a third party.

The Board of Immigration Appeals (BIA) affirmed. It agreed with the IJ's no-past-persecution and no-well-founded-fear-of-future-persecution conclusions, noting the evidence provided did not establish that the threats were "so imminent and pervasive as to rise to the level of persecution." The BIA also concluded that "single fathers in El Salvador who have exposed gang activity in Salvadorian court" is not a cognizable social group. Finally, the Board concluded that the harm to petitioners did not result from this proposed social group but rather from Martinez-Castro opposing the recruitment of his children into Salvadoran gangs.[1] Martinez-Castro petitions this court for review.

II.

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, we review the BIA's decision as the final agency determination." *Zometa-Orellana v. Garland*, 19 F.4th 970, 976 (6th Cir. 2021) (citation omitted). We also review the IJ's reasoning to the extent that it was adopted by the BIA. *Id.* We review factual findings under the substantial evidence standard. *Zhao v. Holder*, 569 F.3d

---

[1]Petitioners did not meaningfully challenge the denial of CAT protection in their appeal to the BIA, rendering it forfeited. *See Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004).

238, 246 (6th Cir. 2009). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

III.

Petitioners initially contend the BIA failed to sufficiently detail its reasoning. "Although the BIA must provide some rational explanation for its contentions, [it] is not required to list every possible positive and negative factor in its decision." *Zometa-Orellana*, 19 F.4th at 976 (internal quotations omitted). It need only "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." *Id.* at 976–77 (internal quotations omitted). That may include, for example, identifying "the IJ's findings on which it was relying in concluding that it ultimately agreed with the IJ's conclusions." *Id.* at 977.

We discern no lack-of-explanation error with the BIA's opinion, for it rationally sets forth its conclusions. The Board gave several reasons for agreeing with the IJ's fact finding and its determination that petitioners had not demonstrated past persecution or a well-founded fear of persecution. For one, "[Martinez-Castro] did not establish that the threats were so imminent and pervasive as to rise to the level of persecution." In support of its conclusion that no cognizable social group existed, the BIA identified the IJ's finding that there was no specific evidence showing that the purported group was viewed as socially distinct within Salvadoran society. Finally, it relied on the IJ's finding that Martinez-Castro's harm resulted from opposing the gang's recruitment of his children to conclude that there was no nexus between the alleged persecution and the purported social group. This is not a case where "the BIA cursorily denied a motion or petition with little to no discussion at all," *id.* at 977, or failed to adequately consider potentially

material evidence, *Marqus v. Barr*, 968 F.3d 583, 593 (6th Cir. 2020). Petitioners' first claim of error is therefore without merit.

IV.

To qualify for asylum under the Immigration and Nationality Act, a petitioner must show that he is "'unable or unwilling' to return to [his] country of origin 'because of [his] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Zometa-Orellana*, 19 F.4th at 976 (quoting 8 U.S.C. §§ 1101(a)(42)(A); 1158(b)(1)(B)(i)). We have construed this to require that a petitioner demonstrate: (1) past persecution or a well-founded fear of future persecution; (2) a connection between the persecution and the protected ground; and (3) the persecution was committed by the government, or by non-government actors whom the government was unable or unwilling to control. *Id.* The BIA concluded petitioners failed to establish these elements, and substantial evidence supports this determination.

A.

Persecution requires physical harm or a significant deprivation of liberty. *Marikasi v. Lynch*, 840 F.3d 281, 288 (6th Cir. 2016). The harm must come from the government or a non-government actor whom the government was unable or unwilling to control. *K.H. v. Barr*, 920 F.3d 470, 475 (6th Cir. 2019). Actions that may constitute persecution include, but are not limited to, "detention, arrest, interrogation, prosecution, imprisonment, illegal searches, confiscation of property, surveillance, beatings, or torture." *Haider v. Holder*, 595 F.3d 276, 286–87 (6th Cir. 2010) (internal quotations omitted). Additionally, persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 390

(6th Cir. 1998). A single event can rise to the level of persecution if sufficiently severe. *Mohammed v. Keisler*, 507 F.3d 369, 371 (6th Cir. 2007).

1.

Petitioners contend that their treatment at the hands of the gang qualifies as past persecution. But the bulk of the evidence introduced shows gang members subjected Martinez-Castro and his children only to occasional verbal harassment that fell short of what is required. *Mikhailevitch*, 146 F.3d at 390. In some instances, "[p]ersecution can include threats to life," but they must be "so severe as to constitute a real threat to life or freedom." *Ouda v. I.N.S.*, 324 F.3d 445, 454 (6th Cir. 2003) (internal quotations omitted). Here, the record demonstrates that petitioners lived in El Salvador for two years following the divorce without gang members subjecting them to physical harm. While gang members threatened Martinez-Castro and his family, these threats did not cause actual physical suffering. Given the absence of physical harm, the threats by themselves may have been "ominous," but they were not an "'immediate and menacing' threat that amounts to persecution standing alone." *Japarkulova v. Holder*, 615 F.3d 696, 701 (6th Cir. 2010) (citation omitted).

Martinez-Castro points only to just a handful of acts going beyond verbal harassment, mainly relying on two events that occurred before his divorce from Portillo: a gang member hit Miguel Angel after he refused to help the gang rob people and Portillo's son-in-law pointed a gun at Velma. Viewed separately or in the aggregate, these two isolated events do not constitute past persecution—the incidents were perpetrated by different people, with different manners of actual or threatened physical violence, and against different children. *See Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (per curiam) ("[T]he critical factor is the overall context in which the harmful conduct occurred.").

Remaining then is when gang members briefly detained Martinez-Castro after the divorce. But they did so without inflicting physical harm. And regardless, his detention does not qualify as past persecution on its own. *Cf. Mohammed,* 507 F.3d at 371 (three days' detention accompanied by a slap and a kick does not arise to the level of treatment constituting persecution in the context of a single incident).

For these reasons, substantial evidence supports the BIA's determination that petitioners did not establish past persecution.

2.

Because petitioners did not demonstrate past persecution, they must establish a well-founded fear of future persecution to qualify for asylum. *Yousif v. Lynch*, 796 F.3d 622, 628 (6th Cir. 2015). To do so, a petitioner must demonstrate "(1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable possibility of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear." *Mikhailevitch*, 146 F.3d at 389 (citing 8 C.F.R. § 208.13(b)(2)(i)). Petitioners, therefore, must show that the well-founded fear of future persecution is "both subjectively genuine and objectively reasonable." *Id.*

But petitioners cannot show that the BIA erred in concluding no well-founded fear exists. For the two years petitioners lived in El Salvador following the divorce, they suffered neither physical harm nor any deprivation of liberty significant enough to qualify as persecution. They offered no specific information indicating that the gang members have continued to seek them out or that would suggest that Portillo would pose a threat if they were to return to El Salvador. While gang members previously threatened them, petitioners have not shown that these threats are likely

to materialize into persecution upon their return. Thus, the BIA reasonably concluded petitioners' speculative fears did not rise to the level of a "real threat of individual persecution." *Marikasi*, 840 F.3d at 292 (internal quotations omitted).

B.

Even if petitioners could establish persecution, substantial evidence supports the BIA's conclusion on the other required asylum requirements—namely, that there was no connection between the persecution and the protected ground, and that El Salvador was not "unable or unwilling" to try to control the gang members' activities.

Consider first their claim that "single fathers in El Salvador who have exposed gang activity in Salvadorian courts" is a cognizable social group eligible for asylum under 8 U.S.C. § 1101(a)(42)(A). To establish a cognizable social group, a petitioner must demonstrate (1) members of the social group "share a common, immutable characteristic," (2) "the group . . . satisf[ies] a particularity requirement," and (3) the group has "social visibility." *Zaldana Menijar v. Lynch*, 812 F.3d 491, 498 (6th Cir. 2015) (internal quotations omitted). Social visibility does not mean "on sight recognition"; instead, the social group must "be perceived as a group by society." *Id.* (internal quotations omitted). It was petitioners' burden to offer specific evidence that Salvadorans view single fathers who have exposed gang activity in divorce court as a group, and they offered none. *Zometa-Orellana*, 19 F.4th at 976. Accordingly, the BIA properly determined petitioners' proposed social group was not perceived as such.

Next, take the BIA's conclusion that petitioners did not establish a nexus between the alleged persecution and the proposed social group. 8 U.S.C. § 1231(b)(3)(A). When the alleged persecution does not increase in severity after joining a protected class, there is no sufficient nexus. *Bonilla-Morales v. Holder*, 607 F.3d 1132, 1138 (6th Cir. 2010). The proposed social group here

hinges on Martinez-Castro's divorce from Portillo. Before that occurred, gang members physically and verbally threatened petitioners to join the gang. After the divorce, only verbal threats continued.

And even if the record demonstrated the threats escalated in severity, gang members did not tie their threats to petitioners' membership in the purported social group. Petitioners "must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting the applicant." 8 U.S.C. § 1158(b)(1)(B)(i). Here, Martinez-Castro failed to establish that his membership in a particular social group was a central reason for the harm inflicted. Instead, the record is replete with statements by petitioners that gang members threatened Martinez-Castro and his children to coerce them into joining the gang. Martinez-Castro himself even acknowledged this, testifying that gang members "tried to get [the children] to be a part of the gangs," "threatened him because he refused to allow the children to join [the gang]," and "[Portillo] wanted to see the children, but also to induce them to join the gang." Rather than targeting him based on his purported social group, Martinez-Castro and his children were victims of more generalized gang violence and recruitment efforts, and so substantial evidence supports the BIA's conclusion that petitioners fail to satisfy the nexus requirement. *See Zaldana Menijar*, 812 F.3d at 500.

Finally, petitioners have not established that El Salvador was unwilling or unable to prevent the gang from inflicting harm or suffering. Indeed, Martinez-Castro and his children introduced evidence to the contrary—the Salvadoran government took measures to address gang violence generally and towards them specifically, including issuing a court order barring Portillo from having contact with Miguel Angel and Velma, investigating threats made by the gang members to the family, and arresting Portillo's son-in-law for his role in a robbery and murder.

For these reasons, substantial evidence supports the BIA's conclusion that petitioners did not establish a connection between the alleged persecution and a protected ground.

V.

Petitioners raise two other issues, neither of which have merit. First, because they cannot establish that Martinez-Castro was a member of a cognizable particular social group, membership in such a group could not constitute "a reason" behind his asserted persecution. *See Guzman-Vazquez v. Barr*, 959 F.3d 253, 270–74 (6th Cir. 2020). Thus, their request for withholding of removal necessarily fails. *See also Kukalo v. Holder*, 744 F.3d 395, 402 (6th Cir. 2011). Second, they contend the BIA erred when it approved of the IJ's finding that they could relocate within El Salvador. But the BIA rested its conclusion on grounds other than ability to relocate. And we note petitioners themselves did not advance that argument before the BIA. *See Ramani*, 378 F.3d at 559–60.

VI.

For these reasons, we deny the petition for review.