# United States Court of Appeals
## For the First Circuit

No. 08-2119

ARNOLD SIHOMBING,

Petitioner,

v.

ERIC H. HOLDER, JR.,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Boudin, and Dyk,[*]
<u>Circuit Judges</u>.

William A. Hahn and Hahn & Matkov, on brief for petitioner.
Terri J. Scadron, Assistant Director, U.S. Department of Justice, Civil Division, Office of Immigration Litigation, and Tony West, Assistant Attorney General, Civil Division, on brief for respondent.

September 22, 2009

---

[*] Of the Federal Circuit, sitting by designation.

**TORRUELLA, <u>Circuit Judge</u>**. Petitioner Arnold Sihombing is a citizen of Indonesia. He seeks judicial review of a final order of the Board of Immigration Appeals ("BIA") upholding the denial of his request for withholding of removal on the basis of political asylum. After careful consideration, we affirm the BIA's decision.

## I. <u>Background</u>

### A. Factual Background

Petitioner Sihombing, who is thirty-four years old and married, was born in Manado, Indonesia. He has been a member of the Seventh Day Adventist Church since the age of seven.

The facts upon which his withholding claim rests are as follows. In 1999, Sihombing began working for the Indonesian Democratic Party (the "Democratic Party") while he was attending the university in Manado and studying political science. Eventually, Sihombing quit the university to work for the Democratic Party. Sihombing recruited local support for the party, which obtained the vice-presidency of Indonesia in the 2000 elections. Soon after the elections, in May 2000, Sihombing became disenchanted with the party and drafted a petition advocating for equal justice for the poor, the elimination of trade monopolies and requesting that business permits be given more easily.

After submitting the petition to the House of Representatives and the Vice-President of Indonesia, Sihombing was accused of being a "Communist" by the leader of the Democratic

Party. Because being a Communist is prohibited in Indonesia, Sihombing believes that after this incident, people "hated" him. He retaliated by telling members of the Democratic Party that their leaders used "the people's money" to support their wealthy lifestyle.

After Sihombing spoke out against Democratic Party leaders, individuals claiming to be members of the military or police guards came to Sihombing's house looking for him. Sihombing was not present at the time, but his parents were. Sihombing was unable to provide an exact date of the visit. Nevertheless, Sihombing alleges that the Democratic Party threatened to persecute his family.

After learning of the visit from the guards, Sihombing left Indonesia to go to Singapore and the Philippines and spent approximately one week in each country. When he left Indonesia, Sihombing left his wife and daughter in the same house the guards had visited. Sihombing never applied for political asylum in Singapore or the Philippines. He instead returned to Indonesia to obtain a visa to enter the United States.

Sihombing entered the United States through New York on March 10, 2001. As a non-immigrant visitor, he was authorized to remain until September 9, 2001. Sihombing remained in the United States past that date without authorization.

**B. Procedural Background**

In 2003, Sihombing came to the attention of the Department of Homeland Security ("DHS") when he registered pursuant to National Security Entry-Exit Registration System ("NSEERS") requirements.[1] On April 17, 2003, the DHS issued Sihombing a Notice to Appear, charging that he had overstayed his non-immigrant visa, and therefore was subject to removal pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1227(a)(1)(B).

On June 3, 2004, Sihombing was ordered removed in absentia when he failed to appear for a scheduled hearing. The following day, Sihombing filed a motion to reopen his case, attributing his failure to appear to confusion about the date of the hearing. The Immigration Judge ("IJ") granted Sihombing's motion to reopen the case. On October 14, 2004, Sihombing filed a Form I-589 application for political asylum. In the alternative, he also requested withholding of removal and relief under the Convention Against Torture ("CAT").

---

[1] In 2002, the Attorney General instituted the NSEERS program, which required nonimmigrant male aliens from certain countries to appear for registration and fingerprinting, and to present immigration-related documents. See Parvez v. Keisler, 506 F.3d 93, 94 n.1 (1st Cir. 2007) (describing NSEERS registration requirements). Indonesia was added to the list of countries subject to NSEERS registration in January 2003. See Registration of Certain Nonimmigrant Aliens from Designated Countries, 68 Fed. Reg. 2,363 (Jan. 16, 2003).

On November 1, 2006, Sihombing appeared before the IJ with counsel for a hearing on the merits of his application. During the hearing, Sihombing provided oral testimony regarding his past experiences in Indonesia.

In an opinion issued on June 21, 2007, the IJ ruled that Sihombing's application for asylum was pretermitted because his application was filed more than four years after he entered the United States and he did not qualify for the changed or extraordinary circumstances exemptions to the filing deadline.[2] The IJ also denied Sihombing's application for removal under the CAT finding that Sihombing did not present any evidence suggesting that he would more likely than not be subject to torture if he were removed to Indonesia. Finally, the IJ also denied Sihombing's application for withholding of removal. The IJ based her ruling on Sihombing's lack of credibility and the implausibility of his story; however, she also held that even if everything Sihombing said was taken as true, his application would not have established a sufficient likelihood of persecution to warrant relief. The IJ granted Sihombing his application for voluntary departure up to and including January 2, 2007, with an alternate Order of Removal to Indonesia.

---

[2] Sihombing's proffered reason for not applying for asylum within one year of his entry of the United States was that he was hoping that conditions would change in Indonesia. The asylum claim is not before us.

Sihombing appealed his decision to the BIA. On July 31, 2008, the BIA affirmed the IJ's decision in its entirety, dismissing the appeal. The BIA adopted the IJ's reasoning in its opinion, agreeing with the IJ that Sihombing did not show changed or extraordinary circumstances to justify his untimely filing for asylum. See 8 U.S.C. § 1158(a)(2)(D). Sihombing timely filed the instant petition for review before this Court.

## II. Discussion

### A. Standard of Review

Sihombing seeks review of his denial of withholding of removal and additionally argues that the available record is insufficient for review due to omissions, creating a due process violation.[3]

"We review the BIA's findings of fact under the deferential substantial evidence standard." Scatambuli v. Holder, 558 F.3d 53, 58 (1st Cir. 2009). "When the BIA adopts the IJ's opinion and discusses some of the basis for the IJ's decision, we have authority to review both the IJ's and the BIA's [(collectively, "the Agency's")] opinions." Ouk v. Gonzáles, 464 F.3d 108, 110 (1st Cir. 2006). Under this deferential standard,

---

[3] Sihombing failed to challenge the timeliness of his asylum application or his application for CAT protection. Accordingly, any arguments concerning the denial of those petitions are deemed waived. See Toloza-Jiménez v. Gonzáles, 457 F.3d 155, 159 n.9 (1st Cir. 2006) (issues not raised in a party's opening brief are deemed waived); see also Oroh v. Holder, 561 F.3d 62, 64 n.1 (1st Cir. 2009).

the findings of the Agency should not be reversed unless the evidence would compel a reasonable fact finder to make a contrary determination. See Guzmán v. INS, 327 F.3d 11, 15 (1st Cir. 2003).

We review the Agency's legal interpretations de novo, but nonetheless "give substantial deference to the [Agency]'s interpretations of the underlying statutes and regulations according to administrative law principles . . . ." Scatambuli, 327 F.3d at 58 (internal citations omitted).

## B. Applicable Law

Withholding of removal is a form of protection which is available to an immigrant who establishes a "clear probability" that his life or freedom would be threatened in the country of removal on account of "race, religion, nationality, membership in a particular social group, or political opinion." See Oroh, 561 F.3d at 67 & n.5; see also 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b). "Although the threshold of eligibility for withholding of removal is similar to the threshold for asylum, withholding requires a higher standard." Scatambuli, 327 F.3d at 58 (internal citations omitted). Specifically, withholding requires an alien to demonstrate that he is more likely than not to be persecuted on account of one of the specified grounds. See Pulisir v. Mukasey, 524 F.3d 302, 308 (1st Cir. 2008); see also Nikijuluw v. Gonzáles, 427 F.3d 115, 120 (1st Cir. 2005).

A withholding applicant who establishes past persecution on account of a protected ground is entitled to a presumption that "his life or freedom would be threatened in the future on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1)(i); see also Pulisir, 524 F.3d at 308. "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Jorgji v. Mukasey, 514 F.3d 53, 57 (1st Cir. 2008) (quoting Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000)). "[T]he discriminatory experiences must have reached a fairly high threshold of seriousness" to form the basis of a past persecution claim. Alibeaj v. Gonzáles, 469 F.3d 188, 191 (1st Cir. 2006).

Even if past persecution cannot be established, the withholding applicant may nevertheless be entitled to relief by proving that he more likely than not will face future persecution on account of a protected ground. 8 C.F.R. § 1208.16(b)(2). This fear must be "both genuine and nestled on a plausible factual predicate." Orelien v. Gonzáles, 467 F.3d 67, 71 (1st Cir. 2006).

## C.  Withholding of Removal

The Agency, in rejecting Sihombing's application for withholding of removal, found that Sihombing failed to establish past persecution in Indonesia. On this point, the Agency found that the most serious incident Sihombing addressed in his testimony was a single non-violent visit to his home by guards purporting to

-8-

be from the Democratic Party. It thus held that Sihombing was ineligible for withholding of removal.

Reviewing the record, we find that Sihombing's past experience in Indonesia was far less severe than in prior cases where this court rejected claims of past persecution and found the Agency's decision to have been supported by substantial evidence. See, e.g., Susanto v. Gonzáles, 439 F.3d 57, 59-60 (1st Cir. 2006) (past persecution not shown where home of ethnic Chinese Indonesian was vandalized and Muslims threw stones at petitioner and fellow Christian worshipers); Nelson, 323 F.3d at 263-64 (affirming IJ finding of no persecution even where petitioner placed in solitary confinement and physically abused).

In the absence of past persecution, Sihombing could nevertheless be entitled to withholding of removal if he can establish a clear probability of future persecution. The Agency held that Sihombing failed to establish such a clear probability.

The IJ found significant that when Sihombing fled Indonesia, he left his wife and child behind. The IJ also found relevant that in the six years Sihombing has been away, no one has approached or harmed his family. See Guzmán v. INS, 327 F.3d 11, 16 (1st Cir. 2003) ("'The fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return.'") (quoting Aguilar-Solís, 168 F.3d 565, 573 (1st Cir. 1999)). In addition, the IJ noted that

Sihombing voluntarily returned to Indonesia after stays in Singapore and the Philippines to obtain a visa. An applicant's voluntary return to his or her home country undercuts his claim that it is more likely than not that he will be persecuted. See De Santamaría v. U.S. Att'y Gen., 525 F.3d 999, 1011 (11th Cir. 2008) (holding that an applicant's "voluntary return to his or her home country is a relevant consideration in determining whether the . . . applicant has a well-founded fear of future persecution); cf. Toloza-Jiménez, 457 F.3d at 161 (holding that an alien's two voluntary returns to her home country after being in the United States "strongly indicat[ed] that she has no fear of persecution"). We thus find that the record would not compel a reasonable fact finder to reach a contrary conclusion.[4]

### D. Sufficiency of Record for Review

Finally, Sihombing argues that inadequate transcription resulted in many "indiscernibles" in the transcript and that as a result, there is not a sufficient record for review of the IJ's decision by either the BIA or this Court. In support of this, he cites a Federal Regulation requiring that the "hearing shall be recorded verbatim except for statements made off the record with

---

[4] In addition to denying Sihombing's petition for withholding of removal based on his inability to prove past persecution or a clear probability of future persecution, the IJ made an adverse credibility determination. This determination was later affirmed by the BIA. Because this credibility determination does not affect our holding, we do not discuss it.

the permission of the immigration judge."  8 C.F.R. § 1240.9. Because of this, Sihombing maintains that these "indiscernibles" in the record constitute a due process violation.

Sihombing's due process argument is unavailing.  "[A] mere failure of transcription, by itself, does not rise to the level of a due process violation."  Oroh, 561 F.3d at 65  (quoting Kheireddine v. Gonzáles, 427 F.3d 80, 85 (1st Cir. 2005)).  To succeed on a claim of inadequate transcription, Sihombing must show "specific prejudice to his ability to perfect an appeal."  Id.  The absence of information from the transcript is not prejudicial "if the missing information could reasonably be recreated by the complaining party."  Id.

The record does contain multiple instances where "indiscernible" is recorded in place of the text of what was said. However, a review of the transcript shows that most of the missing words can be inferred from their context.  In addition, just like in Oroh, the bulk of the "indiscernibles" in the transcript are found during Sihombing's own testimony, or during comments by his attorney, who continues to represent him on appeal.  See id. at 66. Further, Sihombing has failed to point out how the missing information prejudiced him.  Since most of the "indiscernible" information was readily available to Sihombing, the missing information in the transcript was not prejudicial.  Id.  Without prejudice, Sihombing's transcript-based due process claim fails.

-11-

We find that the Agency's determination that Sihombing has failed to establish past persecution or a clear probability of future persecution is supported by substantial evidence in the record. Sihombing's final argument based on a due process violation resulting from insufficient transcription also fails because he has not established that it created prejudice.

### III. <u>Conclusion</u>

For the reasons stated above, we deny the petition for review.

**<u>Denied</u>**.