10-821-ag
Mei v. Holder

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 30ᵗʰ day of August, two thousand eleven.

PRESENT:

      ROGER J. MINER,
      JOSÉ A. CABRANES,
      PETER W. HALL,
            *Circuit Judges.*

--------------------------------------------------------------------------------x

DAHUA MEI,

       *Petitioner*,

       v.                                      No. 10-821-ag

ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL,

       *Respondent*.

--------------------------------------------------------------------------------x

**FOR PETITIONER:**       DAHUA MEI, *pro se*, Brooklyn, NY.


**FOR RESPONDENTS:**     TONY WEST, Acting Assistant Attorney General
             (Francis W. Fraser, Senior Litigation Counsel, Steven
             F. Day, Trial Attorney, *on the brief*)
             Office of Immigration Litigation, Department of
             Justice, Washington, DC.


   Petition for review of a February 18, 2010 order of the Board of Immigration Appeals ("BIA").


   **UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the petition for review is **DENIED**.


   Petitioner Dahua Mei ("Mei"), *pro se*, a native and citizen of The People's Republic of China, appeals a February 18, 2010 order of the BIA affirming the May 19, 2008 decision of Immigration Judge ("IJ") Elizabeth A. Lamb denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), *see In re Dahua Mei*, No. A099 759 030 (B.I.A. Feb. 18, 2010), *aff'g* No. A099 759 030 (Immig. Ct. New York, NY May 19, 2008). We assume the parties' familiarity with the underlying facts, proceedings below, and specification of issues on appeal. Nevertheless, the pertinent facts that Mei submits in support of his application are briefly summarized below.


## BACKGROUND

   Mei was born in Taishan, Guangdong, China on December 29, 1965. After he completed high school, Mei was employed by the People's Government of Taishan City as a government driver. Mei alleges that many of his passengers were government officials, and, as a result, he overheard nonpublic information exposing certain government officers' unlawful and corrupt activities. Relevant here, in March 2001, while Mei was driving the Secretary of the City Commission ("commission secretary"), he overheard the President of the City Electrical Heating Appliance Factory ("factory president") offer the commission secretary a bribe and witnessed the commission secretary accept a large envelope of cash.


   Both on and off the job, Mei had observed deep inequalities between those with power and influence, like the passengers he drove, and everyone else in society. He was aware, for example, that, despite China's one-child family planning policy, certain government officials had been permitted more than one child without penalty.

In September 2000, Mei's wife gave birth to a daughter, the couple's first and only child. In early 2001, his wife again became pregnant. The government discovered the pregnancy in April 2001, and Mei's wife was forced to undergo an abortion. In June 2001, outraged by the widespread political corruption, including the uneven enforcement of the one-child policy, Mei handwrote a letter to the City Commission of Inspecting Discipline ("city commission") describing the bribe the commission secretary had accepted from the factory president. Mei submitted the letter in the hope that the corrupt city officials would be punished. He did not keep a copy of the letter or sign his name to it, however, because he feared retaliation.

On July 5, 2001, the commission secretary, whom Mei had exposed in the letter, called Mei's cell phone and questioned whether Mei had written the letter. The commission secretary told Mei that "the government would believe [the commission secretary] and [Mei] would be disposed by [*sic*] the government." Ten minutes later, Mei received a call from his mother informing him that four public security officers had come to his home to arrest him for fleeing the scene of an accident, a false charge. Concerned that the commission secretary would retaliate against him and that he would be imprisoned and tortured, Mei traveled to a friend's home an hour and a half away, where he remained until he left China in October 2001. He arrived in the United States in November 2001.

Mei claims that the public security bureau continues to send officers to his home in Taishan City in search of him. His wife, daughter, and mother still reside in the home. His wife remains employed in the garment factory in which she worked prior to Mei's departure. Nothing in the record suggests that any government action has been taken or threatened against his wife, daughter, mother, or any other member of his family.

# I

Before turning our attention to the denial of Mei's application for withholding of removal, we pause to address Mei's other claims.

## A

We dismiss the petition for lack of jurisdiction to the extent that Mei challenges the agency's pretermission of his asylum application as untimely. Mei first applied for political asylum in February 2007, over four years after his time to file an application for asylum had expired, *see* 8 U.S.C. §§ 1158(a)(2)(B), 1158(a)(2)(D)(2006) (requiring aliens to file asylum applications within one year after arriving in the United States absent "changed circumstances which materially affect the applicant's eligibility" or "extraordinary circumstances relating to the delay"). Mei asserted that he did not file a timely application only because he did not know he could apply for asylum, which the IJ and BIA determined was not a sufficiently extraordinary circumstance to justify the late filing. *See*

8 U.S.C. § 1158(a)(3)(2006) (providing that no court shall have jurisdiction to review the agency's finding that an asylum application was untimely under § 1158(a)(2)).

**B**

We deny the petition to the extent it challenges the agency's denial of CAT relief. The agency reasonably determined that Mei failed to establish that he faced a clear probability of torture upon return to China, because he did not present any particularized evidence that he would be singled out for torture based on his letter or that those similarly situated in China generally face torture. *See, e.g.*, *Mu Xiang Lin v. U.S. Dep't of Justice*, 432 F.3d 156, 159–60 (2d Cir. 2005) (upholding agency's denial of CAT relief because petitioner relied on general country reports and failed to provide particularized evidence of torture for similar actions).

**II**

Having disposed of these claims, we return to Mei's application for withholding of removal. Specifically, we consider whether the IJ and BIA adequately evaluated—and explained their denial of—Mei's withholding of removal claim.

**A**

When, as is the case here, the BIA's opinion closely tracks the reasoning of the IJ without expressly adopting the IJ's opinion, we review both opinions "for the sake of completeness." *Zaman v. Mukasey*, 514 F.3d 233, 237 (2d Cir. 2008) (per curiam). The IJ and BIA's determination that Mei was not eligible for withholding of removal must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *See, e.g.*, *Chen v. INS*, 359 F.3d 121, 127 (2d Cir. 2004) (internal quotation marks omitted). We may reverse only if the evidence Mei presented was so compelling that no reasonable factfinder could have failed to find that Mei established a clear probability that he would be subjected to persecution if forced to return to China. *See, e.g.*, *id.* Despite the general deference with which we review IJ and BIA opinions, "we require a certain minimum level of analysis" to ensure that "judicial review is to be meaningful," including "some indication that the IJ [and BIA] considered material evidence supporting a petitioner's claim." *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005). Accordingly, we may remand for reconsideration or rehearing if the IJ and BIA omitted potentially significant facts or if other circumstances warrant such relief. *See, e.g.*, *id.*

**B**

To obtain withholding of removal, Mei must establish a clear probability that his "life or freedom would be threatened" in China on account of the political opinions expressed in his letter to the city commission. 8 C.F.R. § 1208.16(b)(2011); *see, e.g.*, *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004). The withholding of removal analysis frequently begins with an examination of

4

whether an applicant has suffered past persecution, because a finding of past persecution creates a rebuttable presumption that the applicant's life or freedom would be threatened in the future. 8 C.F.R. § 1208.16(b)(1)(2011); *see, e.g.*, *Bah v. Mukasey*, 529 F.3d 99, 111–14 (2d Cir. 2008). This approach is not required, however. Indeed, the IJ or BIA need not make any explicit finding as to past persecution, as long as a finding can be inferred from the opinion. *See, e.g.*, *Pulisir v. Mukasey*, 524 F.3d 302, 308 (1st Cir. 2008) (citing, in the context of a withholding of removal claim, the "well-settled tenet that an implicit finding of past persecution will suffice").

Absent past persecution, Mei can establish eligibility for withholding of removal by demonstrating a clear probability of future persecution on account of the political views he expressed in the letter. To meet the clear probability standard, Mei must demonstrate that it is more likely than not that he will be subjected to persecution upon return to China. 8 C.F.R. § 1208.16(b)(2).

## C

Although neither the opinion of the IJ nor that of the BIA explicitly addresses whether Mei suffered past persecution in China on account of his political views, each implicitly determines that he did not. *Cf. Pulisir*, 524 F.3d at 308 ("[Although] the decisions below may be slightly elliptical, [their] findings regarding past persecution are easily inferable."). As part of a broader analysis of whether Mei is entitled to withholding of removal, both opinions discuss the general acts of past persecution that Mei alleges—in particular, that after Mei sent a letter containing accusations of political corruption to the city commission in 2001, he received a telephone call from the commission secretary, whom his letter had exposed, asking if he had written the letter, and the public security bureau then began searching for Mei and continues to visit his home in Taishan City. Particularly relevant to a finding against past persecution, the BIA notes that Mei was never actually "mistreated or abused by the Chinese government." *In re Dahua Mei*, No. A099 759 030 (B.I.A. Feb. 18, 2010). The IJ and BIA, in discussing Mei's alleged experiences, determined that those relatively mild incidents, though perhaps quite frightening to Mei, fail to satisfy the high standard required to prevail on a withholding of removal claim, necessitating a finding that Mei did not suffer past persecution. *See Pulisir*, 524 F.3d at 3080 (holding that the IJ and BIA, in "discuss[ing] the alleged acts of persecution and f[inding] that those rather bland incidents failed to justify the relief requested, . . . necessarily . . . decide[d] the question of past persecution").

The basis for inferring a past persecution finding is inextricably intertwined with the IJ and BIA's explicit discussion and factual determinations on the issue of future persecution. In light of the relatively meager evidence contained in the record, the IJ and BIA concluded that Mei fell far short of the particularly high standard of proof necessary to achieve withholding of removal—namely, that Mei will more likely than not experience persecution as an unavoidable

5

consequence of returning to China. Not only were the previous government interactions Mei described relatively benign, but the record did not clearly show what risks, if any, Mei might face upon returning to China over a decade after purportedly sending a single unsigned letter to the city commission exposing the commission secretary's act of corruption. Even assuming that the public security bureau continues to search for him, more concrete evidence is necessary to establish that, if the security bureau were to find him, then he would more than likely experience persecution as a result. After all, "persecution" is itself a "term of art" in the immigration context, requiring a quantum of harm "beyond mere discomfiture, unpleasantness, harassment, or unfair treatment," *Morgan v. Holder*, 634 F.3d 53, 58 (1st Cir. 2011) (internal quotation marks omitted), and exceeding "even basic suffering," *Pangemanan v. Holder*, 569 F.3d 1, 3 (1st Cir. 2009) (internal quotation marks omitted); *see also Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 341 (2d Cir. 2006) (observing that "persecution does not encompass mere harassment" (quoting *Chen v. INS*, 12 F.3d 121, 128 (2d Cir. 2004))). Mei has expressed concern that he would be incarcerated and tortured upon his return to China, but he was unsure whether there was a warrant out for his arrest and did not present particularized evidence that similarly situated individuals have experienced that fate. Mei's fears are also undercut by their apparent confinement to a single municipality within China—Taishan City. The Republic of China, a 3.7 million square mile geographical area, holds a population of over 1.3 billion in 23 provinces. *See* U.S. Department of State, 2010 Profile on China, *available at* http://www.state.gov/r/pa/ei/bgn/18902.htm. In addition to hundreds of small cities and villages, China has many major cities, including Beijing, Shanghai, Tianjin, Shenyang, Wuhan, Guangzhou, Chongqing, Harbin, and Chengdu. *See id.* Nothing suggests that Mei might remain a target of the Taishan City government if he were to relocate his family to a different region.

Having reviewed the IJ and BIA's opinion in full, we hold that the factual determinations underlying the denial of Mei's application for withholding of removal are supported by substantial evidence in the record. The fact that the opinions did not exhaustively discuss every detail contained in the record[1] does not undermine this conclusion. The IJ and BIA were not required to provide an exhaustive treatise explaining how, why, and whether each and every fact in the record that conceivably could have supported Mei's claim contributed to their factual determinations. Aside from specific categories of evidence—namely, country conditions reports and testimony regarding the infliction of physical harm—it is appropriate to presume that the IJ and BIA considered the record evidence in full, absent compelling evidence to the contrary. *See, e.g., Chen v. U.S. Dep't of*

---

[1] For example, both opinions repeatedly refer to the commission secretary's phone call to Mei, the home visits from public security officers, and Mei's fear that he will be arrested upon return to China, but neither opinion specifically mentions Mei's testimony that (1) the commission secretary told Mei on the phone that "the government would believe [the secretary] and [Mei] would be disposed by [*sic*] the government," or that (2) soon after the commission secretary called, Mei spoke with his mother and learned that four public security officials had come to his home to arrest him for fleeing the scene of an accident, a false charge.

*Justice*, 471 F.3d 315, 336 n.17 (2d Cir. 2006) ("Indeed, we presume that an IJ has taken into account all of the evidence before him, unless the record compellingly suggests otherwise. Accordingly, the IJ need not engage in 'robotic incantations' to make clear that he has considered and rejected a petitioner's proffered explanation." (quoting *United States v. Brown*, 98 F.3d 690, 694 (2d Cir. 1996))); *Morales v. INS,* 208 F.3d 323, 328 (1st Cir. 2000) ("Where, as here, the [BIA] has given reasoned consideration to the petition, and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented." (internal quotation marks omitted; alteration in original)); *see also* 8 C.F.R. § 1240.11(c)(4)(2011) (requiring only that "[a]n adverse decision shall state why asylum or withholding of removal was denied"); *cf. Chen v. INS*, 359 F.3d 121, 128 (2d Cir. 2004) (remanding where the IJ failed to consider petitioner's claim that he was beaten and the BIA "perpetuated and confounded that flaw by not only ignoring the testimony but also flatly asserting that no such testimony existed in the record," noting that physical harm inflicted on an applicant on the basis of his or her statutorily protected status is a circumstance relevant in establishing past persecution); *Chen v. Gonzales*, 417 F.3d 268, 272, 275 (2d Cir. 2005) (requiring consideration of favorable country conditions reports).

Moreover, any error in failing to discuss relevant evidence would not require remand in this case because, in light of the high standard for withholding of removal and the relative dearth of evidence Mei presented in support of his claim, remand would serve as nothing more than a futile formality. *See Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 338 (2d Cir. 2006) (noting that "judicial review of agency action" need not be converted "into a ping-pong game and that remand is not required where it would be an idle and useless formality," but rather, only where there is a significant chance that, but for the error, the agency may have reached a different decision (internal quotation marks omitted)).

In sum, based on the full record before us, we affirm the denial of Mei's withholding of removal claim. The factual findings of the IJ and BIA underlying the dismissal were supported by reasonable, substantial, and probative evidence on the record considered as a whole, and the evidence Mei presented was not so compelling that no reasonable factfinder would have denied his request for withholding of removal.

## CONCLUSION

We have considered Mei's other arguments on appeal and have found them to be without merit. Accordingly, the petition for review of the decision of the BIA is **DENIED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk